IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| ROSS L. HURLBUT | § § | |
| v. | § § | Civil Action No: _____ |
| DIGITAL ROOM, LLC | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT and JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff ROSS L. HURLBUT complaining of Defendant DIGITAL ROOM, LLC and for cause of action would respectfully show the Court the following:

I.

**PARTIES**

1.01.   Plaintiff ROSS L. HURLBUT ("ROSS" or "Plaintiff") is an individual residing in Tarrant County, Texas.  At all material times he was an employee of Defendant.

1.02.   Defendant DIGITAL ROOM, LLC ("DIGITAL ROOM" or "Defendant") is a California limited liability company with its purported principal place of business located at 1130 Avenue H East, Arlington, Texas  76011, Tarrant County, Texas.  It was previously known as Digital Room, Inc. (Incorporated) before it converted or merged to an LLC entity in approximately 2017.  Defendant has been doing business in Texas at all material times herein, including at such Arlington, Texas location.  It may be served with process on its registered agent, C T Corporation System, whose address, is at 1999 Bryan St., Suite 900, Dallas, Texas 75201

II.

**JURISDICTION & VENUE**

2.01.   Jurisdiction is based on federal subject matter jurisdiction. This action arises under 42 U.S.C §2000e et. seq.("Title VII") for which this Court has jurisdiction.  This Court has jurisdiction over Defendant which resides in this district.  Venue is proper in this district because the events giving rise to this cause of action occurred in Tarrant County, Texas.

III.

## OVERVIEW

3.01. This is an race discrimination in employment case in which Defendant DIGITAL ROOM unfairly gave fake sales to a Black sales representative to falsely boost his performance and commission pay, but does not do so for the White sales representatives, including Plaintiff. It then retaliates against Plaintiff after he makes a complaint of race discrimination and retaliation..

3.01. Plaintiff is an employee within the meaning of Title VII and belongs to a class(es) protected under that statute, namely his race, Caucasian.

3.02. Defendant is an employer within the meaning of Title VII.

3.03. On or about December 19, 2019, Plaintiff timely filed his complaint for race discrimination, harassment and/or retaliation with the Equal Employment Opportunity Commission ("EEOC") under Charge No. 450-2020-00491, which was filed within 300 days after one or more of the alleged unlawful employer practices in violation of Title VII occurred. A copy of his Charge of Discrimination is attached and incorporated here by reference as **Ex A**. On or about April 6, 2023, he received his right to sue letter from the EEOC for which he then filed this suit within 90 days of receiving it.

IV.

## BACKGROUND

4.01. At all material times, Plaintiff was employed by DIGITAL ROOM as a Business Development Representative at its facility in Arlington, Texas between approximately April, 2018 and September 30, 2021.

4.02. DIGITAL ROOM is an e-commerce printing company with approximately 200 or so employees or more in Arlington, Texas. Its Business Development Representatives are sales representatives tasked with finding and generating new customers and sales orders, especially for the company's private print store products and services. These representatives are paid both an hourly rate as well as commissions (based on new customer business and orders they must personally initiate and generate).

4.03. From Plaintiff's hire date in April, 2018 to approximately June 2019, Plaintiff was the top producer in business development sales, exceeding his quotas by approximately over 100% on average a month over that period. No other business development representative came close to his success. By

approximately April 2019, Plaintiff received a raise and was told by management that he was being considered for promotion to the national sales team.

4.04. **Discriminatory favoritism against Whites.** However, the company delayed Plaintiff's one-year review and did not so promote him. Management decided to unfairly "prop up" another Business Development representative with phony sales numbers, even though his production was consistently and substantially below Plaintiff's performance. In contrast to Plaintiff's demonstrated ability, such representative also demonstrated relatively poor sales skills and poor initiative in generating customers or new sales, and was relatively unable to develop and maintain sufficient customer relationships. That other representative was Reginald Hullaby, who is Black. Both Plaintiff and Mr. Hullaby started on the same day as Business Development representatives, doing the same job.

4.05. DIGITAL ROOM'S management's plan was to have Mr. Hullaby look much more productive than he actually was, by crediting sales to him as though he had initiated, generated or sold them—even though he did not. Management and Mr. Hullaby "fabricated" his production numbers in order to make it look like he was equaling or outperforming Plaintiff. This would ensure that, on paper, it would look like a Black employee was out performing (although falsely) a White employee in the same position, to ensure that he got greater recognition, commissions or promotion opportunity. All of this phony performance was based upon fabrication or lies. They wanted to favor a Black employee over a White employee, who was outperforming the Black employee.

4.06. Through its managers and/or HR DIGITIAL ROOM implemented an employment scheme or program to unfairly favor or promote certain races or skin colors over a different race or color. These phony sales given to the Black representative clearly violated the company's own written commission and sales-crediting rules and account-assignment approval system. Defendant's managers specifically discussed and planned to get Mr. Hullaby to appear as though he was "*as good, if not better than Ross*." They carried through with this plan by discriminating against Plaintiff and/or other White Business Development representatives in favor of Mr. Hullaby.

4.07. DIGITAL ROOM implemented their plan by unfairly "padding" Mr. Hullaby's sales numbers with phony sales. Among other things, management gave him credit for sales *already* placed on its regular online ordering system—which were *not* in any way initiated, sold, generated or placed by Mr. Hullaby. In or around July, 2019, Plaintiff discovered that the company had been artificially padding his sales numbers, some of which were later determined may have begun in June, 2019 or earlier.

4.08. For example, first Defendant's managers gave Mr. Hullaby "fabricated or false sales," which he did not initiate, generate, sell or close. Second, they credited him with established "customer accounts" which already had proven or repeated sales, which he likewise did not initiate, generate, sell and close. Third, they also funneled new or hot sales leads ("escalation sales") to him outside of the normal

procedure, which they gave only to him., even though Mr. Hullaby has no prior contact or involvement in generating such orders.  Fourth, they allowed him credit for "old" sales that had already been placed, which Mr. Hullaby had nothing to do with, in order to make it look as if he originally placed or helped placed such orders himself.

4.09.    All of this was done by Defendant to create a false narrative or record to make Mr. Hullaby appear as though he was selling or producing more than Plaintiff.  Apparently, this would allow the company to claim it were "promoting" a minority—at the expense of a White employee.  The company variously continued to do this month after month, in one fashion or another, through at least February, 2020.

4.10.    Consequently, in approximately late June or July, 2019, Mr. Hullaby's end-of-the month sales reports *suddenly skyrocketed* with phony sales numbers, *adding* approximately $15,000-20,000 and in some cases as much as $35,000 a month to his sales numbers--none of which he created or earned himself.  With such false and unearned sales, his numbers suddenly and dramatically jumped from approximately $40,000–45,000/month to as high as $92,000/month.  His numbers suddenly passed Plaintiff's sales numbers, all by design or result of the company's plan.

4.11.    In sharp contrast, Plaintiff was not allowed or given credit for such large volume of: phony sales, established customer accounts, new/hot sales leads, or old sales.  Plaintiff was not propped up, assisted or given this same advantage.  Such plan or scheme of DIGITIAL ROOM was racially based or otherwise due to Plaintiff's race, because Mr. Hullaby was Black.

4.12.     This scheme, as applied to Plaintiff, negatively affected an employee of a different race or color. DIGITIAL ROOM clearly favored a Black employee over a White employee, apparently under the supposed excuse or ruse of promoting or making itself look more inclusive or  diverse, and/or for discriminatory equity reasons.  DIGITIAL ROOM HR Director, Alma Avalos openly stated that White employees are *not* in a protected class, showing  pure intent to discriminate by race.

4.13.    As a direct consequence of fabricating Mr. Hullaby's sales numbers, the company more than doubled his sales numbers within about 2-3 months with phony sales. This continued.  As a result, Mr. Hullaby was given a built-in customer base falsely attributed to him, for which he also continued unfairly to receive greater commissions then Plaintiff.  Moreover, it is understood that Mr. Hullaby was also given a higher hourly base pay rate than Plaintiff.

4.14.    **Many complaints to Management and HR.**   Plaintiff made several complaints to DIGITAL ROOM's managers and HR department about this racial discrimination and favoritism from approximately July, 2019 through approximately February, 2020.

4.15.    Around July 30 and 31, 2019, Plaintiff complained about this racial favoritism to his manager (Wendy Vanderpoel) and then to HR.  He also repeatedly complained about this Vice President (Shane Clark)

and Human Resources (Director (Alma Avalos), and HR representative (Lisa Fiala). He provided them with very specific information and documentation of this discriminatory treatment. He asked them to please stop this unfair and racially discriminatory favoritism and such fraudulent or false accounting practices. He specifically complained to them that this was race discrimination and retaliation.

4.16.   In this regard Plaintiff told, showed, emailed and offered to provide much evidence and data of many specific fake sales given to Mr. Hullaby to Defendant's managers and HR, including VP Clark, and its president and CEO. Among other things, Plaintiff emailed his written complaint to HR and even offered to show them in front of the computer with the company's own software how the fake sales are made for Mr. Hullaby. He provided them detailed information. However, they all outright dismiss or ignore his evidence and repeated offers of evidence.

4.17.   Moreover, despite his reporting of this unfair discriminatory treatment, Defendant's management do nothing to either stop or correct the unfairness and discrimination. Instead Mr. Hullaby continued to be propped up with phone sales and unearned commissions. He also then received credit for repeat sales based on the original phony sales.

4.18.   The company did not initiate any follow up with Plaintiff or requested any additional information or documentation he offered. It is as though management is waiting for this to blow over, thereby allowing Mr. Hullaby's fake record of high sales to look more "legitimate" by the passage of time, and/or to reward or promote him rather than Plaintiff. Plaintiff's work environment became hostile.

4.19.   **Contrived Investigation.**  Defendant claimed that it conducted an investigation into Plaintiffs complaints of race discrimination/retaliation. Instead, it dismissed his complaints, ignored evidence, refused to provide specifics, dragged out the investigation and takes no real action. For weeks, it delays any investigation or telling Plaintiff of the results or status of his complaint. Moreover, within days of his initial complaint Mr. Clark and Ms. Vanderpoel are essentially given free rein to retaliate against and intimidate Plaintiff.

4.20.   Importantly, the main persons originally accused in Plaintiff's complaint of giving fake sales to and unfairly favoring Mr. Hullaby, namely Mr. Clark and Ms. Vanderpoel, are tasked by Defendant to conduct the investigation. It was no surprise that Mr. Clark concludes that there was nothing to worry about and that there was no unfairness or discrimination. In effect, Defendant allowed the fox guard the hen house.

4.21.   **Retaliation.**  After making his above and other complaints to DIGITAL ROOM, its managers and/or HR target Plaintiff for retaliation. His manager, Ms. Vanderpoel, tried to set him up or falsely accuse him of technical rule or attendance violations. For instance, on or about September 27, 2019, he also complained to HR that Ms. Vanderpoel was retaliating and that she had told others that she was retaliating against him.. However, HR told Plaintiff—again falsely—that there was no such retaliation and they had no verification that she had said that. Management planned and took action to discipline or fire Plaintiff for coming forward with his complaints.

4.22.    Consequently, there was a wave of reprisals against Plaintiff since he made his initial complaint, among other things, by trying to find slip ups or technicalities against him concerning communications, time cards, time reporting, PTO, unpaid time off or customer follow up by my direct manager Wendy Vanderpoel and others, none of which actions were taken against him or allegedly occurred before he made his complaints of favoritism and discrimination.  Moreover, he was closed off and isolated and shunned at work. These reprisals are not coincidental.  Plaintiff specifically asked management or HR for protection against retaliation, but DIGITAL ROOM essentially did nothing and allowed it to continue.

Management responded to Plaintiff's complaints with denials, insults, derision and intimidation by not only HR, but also his superior, VP Clark.  Importantly, HR Director Avalos specifically tells Plaintiff, that as a White man, was "*not part of a protected class*" under discrimination law, and therefore had no case of discrimination or anything to complain about.

4.23.    The conduct described above has caused damages to Plaintiff including, without limitation, loss of earnings and commissions, loss of promotion or opportunity for promotion and/or benefits, loss of reputation and other damages.

4.24.    **Adverse Action – Discrimination claims.** Defendants' above-described disparate and unfair treatment of Plaintiff compared to Mr. Hullaby materially and adversely affect Plaintiff's compensation.  The issue of compensation is a well-recognized adverse employment action in both discrimination and retaliation claims.  Commissions are central to compensation for sales representatives, whom an employer, such as the case here with Defendant paid a lower base salary/wage by motivating them with opportunity to make up for the lower base pay with incentive-based commission income. That was the purpose and design of the terms of Defendant's written commission rules for its business development representatives, including Plaintiff and Mr. Hullaby.

4.25.    However, DIGITAL ROOM did not evenly apply its commission rules as written. Rather, it gave preferential pay to Mr. Hullaby over Plaintiff.  It deliberately gave Mr. Hullaby much extra or additional commission compensation for "unearned" sales he did not produce or have the required personal involvement as required by DIGITAL ROOM'S rules.  It did not give Plaintiff the same or similar magnitude in sales amounts or orders in "fake sales" as it gave Mr. Hullaby.  Because Defendant did not do the same for Plaintiff, it adversely affected Plaintiff's receipt of additional commission compensation, which he would have received had he had been treated the same as the Black representative, Mr. Hullaby.  This negatively altered the terms and conditions of Ross's employment and pay.

4.26.  In other words the fake sales given to Mr. Hullaby essentially resulted in automatic extra commission income to him, which he did not earn or work for—in violation of Defendant's own incentive- based rules to earn commissions.  Thus, Defendants ensured that Mr. Hullaby's sales numbers and his commissions were unfairly and substantially increased, by the end of each month, but did not do so for Plaintiff or other similar White representatives.

4.27.  This disparate and unfair treatment began shortly after Vice President Clark and Manger Vanderpoel expressed in 2019, their plan for Mr. Hullaby (Black) to do as well or better than Plaintiff (White), even though Plaintiff was the better performer.  Plaintiff's commissions were discriminatorily diminished and suppressed by Defendant in contrast to Mr. Hullaby's unfairly inflated commissions.  This difference also continued after and/or because of Plaintiffs complaints for discriminatory and/or retaliatory reasons.  Additionally, Plaintiff's reputation and/or opportunity for advancement or promotion was denied and/or adversely affected, further resulting in loss of income.

4.28.  **Adverse Action – Retaliation claims.**  The standard for adverse action for retaliation claims is broader and not tethered solely to work-related actions, per se.  A plaintiff need only show the adverse employer action "*well might have dissuaded a reasonable worker from making or supporting a charge of discrimination*." (Italics added)  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 66-69 (2006), citing *Oncale v. Sundowner Onshore Servs.*, 523 U.S. 75, 81-82 (1998).

4.29.  After Plaintiff complained of race discrimination and retaliation to Defendant's management and HR, it went after him in various and multiple ways of reprisal, each of which singularly or in combination would likely discourage a reasonable employee from making or supporting a discrimination claim.

4.30.  For example, among other things, Defendant's HR Director Avalos' statement to him that White males are not a protected class under discrimination law reveals that DIGITAL ROOM felt it had a license to discriminate and retaliate action against Ross because he was of the wrong race or color.

4.31.  Moreover, following his complaints, DIGITAL ROOM'S managers intimidate and bully Ross, conduct surveillance on him, monitor his emails, gin up attendance issues unfairly, accuse or write him up for attendance violations, change rules to hide its tracks, complain of minor or false performance issues against him, and refuse to help him in his job.  Moreover, all management emails to Ross were then also copied to multiple HR personnel and upper management, including those implicated in his race discrimination/retaliation complaints.  Prior to making his complaints, virtually none of these things happened.

4.32. Furthermore, Defendant also engaged other employees to harass and spy on Ross by watching and timing him while he is in the breakroom, when he talks with co-workers on breaks, and while he is working. They did *not* do this to Mr. Hullaby. In fact, Mr. Hullaby also monitors and/or reports on Plaintiff to management and/or HR.

4.33. Shockingly, as alleged above, DIGITAL ROOM assigned Vice President Clark with assistance from Ms. Vanderpoel to investigate Ross's complaint, even though they are accused in those complaints. As further set out below, Defendant also allowed Vice President Clark to intimidate Plaintiff and allowed Wendy and HR to coordinate a scheme of retaliation. Moreover, Defendant also refused to look at or consider Plaintiff's offered evidence, kept him in the dark as to the investigation, and then refused to tell him its findings.

4.34. On or about 8/5/19, in a meeting with Plaintiff about the charge, Vice President Clark took over the investigation and meeting. He intimidated Ros:, arguing and pushing back, accusing him of trying to take advantage of the company, and telling him he is wrong and has no evidence. Moreover, he belittled Ross, making fun of his face and eye movements.

4.35. On or about 8/12-13/19 VP Clark called Ross on his personal cell phone to get Ross to drop his complaint, arguing and accusing him of being obsessed with Mr. Hullaby and demanding Plaintiff's end game. He tells Plaintiff to forget or let go of his complaint and focus on his job, instead.

4.36. On or about 8/21/19, Manager Vanderpoel told another employee, that she is going after Ross by looking at his time cards, and states she will be "that bitch" to get him. Manager Vanderpoel's subsequent actions were consistent with her expressed intention of going after Ross, as set out below.

4.37. On or about 8/27/19, HR Director Avalos met with Ross about his complaint, but just argues with him. Even though Plaintiff also protested to her that that Mr. Clark had been intimidating him which he asked be stopped, Ms. Avalos took no action and did nothing.

4.38. On 8/22/19, Ms. Vanderpoel suddenly asked an employee how to track employee's availability and number of calls he made. The next day, she tried to discipline Plaintiff for not clocking out for lunch in a new clock system, even though he never left the building or had instruction on that system. This was the first time she had ever done this with him. She continued her stated objectives by surveilling and secretly investigating Ross to unfairly find technicalities over clocking in or out issues to spring on him in order to fire or discipline him. She had never done this before to him, and did not do the same with Mr. Hullaby.

4.39. DIGITAL ROOM's management also surveilled Plaintiff, using other employees and managers to spy on him, collect information and report back, all in a plot to find a technicality to

discipline him.  They did not do the same for Mr. Hullaby.    At the same time, its managers enlisted others to harass and spy on Ross by watching and timing him while he was in the breakroom, when he talked with co-workers on breaks, and when he was working.

4.40.    Management also poured over surveillance videos of his daily movements and assiduously checked them against his time cards.  They did not do this for Mr. Hullaby.  They dredged up clocking-out or attendance issues well after the fact, which Ms. Vanderpoel did not talk to Ross about at the time, which was her job and had always done for Ross before.

4.41.    Defendant even had Mr. Hullaby, the very recipient of the racial favoritism of which Ross complains, also monitor Ross and report to management and/or HR.

4.42.    From approximately 9/5/19 – 9/10/19,  Ms. Vanderpoel and Ms. Avalos refuse to approve Plaintiff's absence to see a doctor by deliberately refusing to approve, hoping he will miss a supposed deadline to submit a doctor note, so they could discipline him. They similarly did so again on 1/30/20.

4.43.    On or about 9/5/19, as previously mentioned, HR Director Alma Avalos met with Plaintiff and told him that as a White man he was not in a protected class under discrimination law, so that has no discrimination claim.  In the meeting, Ms. Avalos and HR Generalist Lisa Fiala also tried to intimidate him and became combative.

4.44.    Between approximately 9/13/10 – 10/1/19, Plaintiff repeatedly reported incidents of reprisal to HR by Manager Vanderpoel and intimidation by VP Clark, and pleaded for protection against retaliation.  However, HR not respond or take action to protect him.

4.45.    On 9/16/19, Manager Vanderpoel unfairly tried to change the attendance policy to catch Ross in order to discipline him.

4.46.    On or about 10/1/19,  Defendant again allowed VP Clark to lead another meeting with Plaintiff about  his complaint.  Mr. Clark intimidated, insulted and discounted Plaintiff.  It got heated.  Again, Mr. Clark belittled Ross's face and eyes and dismissed his complaint.

4.47.   Beginning in approximately July 2019, Plaintiff repeatedly complained of this discrimination, harassment and retaliation to upper management and HR  However, the discrimination and harassment did not end and/or continued through at least through February, 2020.

4.48.   Additionally, Plaintiff was subjected to discrimination and/or a hostile work atmosphere based upon Plaintiff's race and in retaliation for making a complaint of discrimination and/or retaliation, including, but no limited to: (a) unfairly disciplining and targeting him, (b) giving preferential treatment to Black employees, (c) shunning and isolating him and general harassment, and/or as set out above.

4.49.   As a result of the above conduct a of Defendant, Plaintiff has suffered loss of past and future income, bonuses and/or benefits, all in an amount in excess of the minimum jurisdictional limits of this Court.

V.
**COUNT I:   RACIAL DISCRIMINATION**

5.01.   The allegations in Sections III-IV above are incorporated here by reference for all purposes.  These allegations constitute discrimination by Defendant against Plaintiff because of race by Defendant against Plaintiff, including disparate treatment, harassment and/or hostile work environment.  He was treated differently or less favorably than similarly situated Black employees,

5.02.   These allegations constitute violations of Plaintiff's rights under Title VII, resulting in damages to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court for which he now prays judgment against Defendant.  In this connection, he is entitled

to equitable relief under Title VII, including back pay; an injunction against Defendant against further discrimination and/or retaliation; and court costs.

5.03. Defendants' conduct above was intentional and as such entitles Plaintiff to compensatory damages as are allowed under Title VII, for which Plaintiff now prays judgment.

## VI.
## COUNT II:   RACIAL RETALIATION

6.01. The allegations in Sections III-IV above are incorporated here by reference for all purposes. Additionally, and/or in the alternative, these allegations constitute race discrimination retaliation by Defendant against Plaintiff for making or filing a charge and/or complaints of discrimination, harassment or retaliation.

6.02. These allegations constitute violations of Plaintiff's rights under Title VII, resulting in damages to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court for which he now prays judgment against Defendant. In this connection, he is entitled to equitable relief under Title VII, including back pay; an injunction against Defendant against further discrimination and/or retaliation; and court costs.

6.03. Defendants' conduct above was intentional and as such entitles Plaintiff to compensatory damages as are allowed under Title VII, for which Plaintiff now prays judgment.

## VII.
## DAMAGES

7.01. The allegations in Section III- IV above are incorporated here by reference for all purposes.  As a result of the above wrongful acts and conduct of Defendants set out therein, Plaintiff has suffered damages, including, among other things as also set out above, loss of income, loss of earning potential, promotion opportunity, mental anguish and stress in the past and which are reasonably expected to continue in the future, in a sum in within the jurisdictional limits of this Court, for which he now prays judgment..

## VIII.
## PUNITIVE DAMAGES

8.01. The allegations in Section III- IV above are incorporated here by reference for all purposes.   Additionally, Plaintiff would show that Defendants engaged in the above

discriminatory practice and acts with malice or with reckless indifference to the Plaintiff's rights, and as such, is entitled to compensatory and/or punitive damages under Title VII in a sum in within the jurisdictional limits of this Court, for which he now prays judgment.

## IX.
## ATTORNEY'S FEES & COSTS

0.01. Plaintiff is also entitled to recover from Defendant an additional sum to compensate Plaintiffs for his reasonable or necessary attorney's fees, expert witness fees and other costs in the preparation and prosecution of this action, as well as all such reasonable fees and costs for any and all appeals pursuant to Title VII, for which he now also prays judgment.

## X.
## JURY DEMAND

10.01. Plaintiff hereby demands a jury trial and tenders the appropriate jury fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final hearing or trial, Plaintiff be awarded judgment against Defendant for the following:

1. Actual damages as claimed above, in an amount in excess in the minimal jurisdictional limits of this Court;

2. Compensatory damages as set forth above;

3. Equitable relief as set forth above;

4. Pre-judgment interest at the maximum or prevailing rate as permitted by law and post-judgment interest on such judgment at the legal rate from date of judgment as permitted by law;

5. Punitive damages as set out above;

6. All reasonable and necessary attorney's fees;

7. All costs of court and reasonable expert witness fees; and

8. Such other and further relief at law or in equity to which Plaintiff may be justly entitled, whether general or special.

Respectfully submitted,

Hurlbut Law Firm

/s/ Roger L. Hurlbut
ROGER L. HURLBUT, Esq.
State Bar No. 10309250
P.O. Box 171435,
Arlington, Texas 76003
Phone: Metro: (817) 226-4466
        Fax:    (817) 459-0003
roger@hurlbutlawfirm.com

**ATTORNEY FOR PLAINTIFF**

# EX. A

450-2020-00491

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>DUAL FILING |
|---|---|---|

Texas Commission On Human Relations _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ross L. Hurlbut | (817) 907-7737 | 01/21/85 |

Street Address: 4115 Cumberland Road, # 713, Fort Worth, Texas

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Digital Room, Inc. | est. 200 + | (817) 701-3555 |

Street Address: 1130 Ave. H East, Arlington, Texas 76011

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest Approx. — Latest Approx.
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for Digital Room, Inc. since approximately April 16, 2018. I was its top producing Business Development Representative in Arlington, Texas and was told I was being considered for promotion.

However, the company has favored another lesser-performing business development representative over me because of his race, by among other things, artificially propping up his sales numbers, commissions and promotion opportunities by unfairly crediting him with phony sales and accounts. My repeated complaints to management and HR have been ignored and derided and I been retaliated against.

I believe I have been racially discriminated and retaliated against by my employer, and/or other employees and managers in violation of Title VII, TCHR and/or other laws.

See attached EEOC & TWC Charge/Complaint, dated 12/2/19, which is incorporated here by reference.

**RECEIVED**
DEC 19 2019
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DALLAS DISTRICT

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 12/2/19

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 12/02/2019

ALTON J BOSTICK III
NOTARY PUBLIC
STATE OF TEXAS
ID # 124089422
My Comm. Expires 08-02-2022

EEOC & TWC Charge/Complaint (attachment)
12/2/19

| | |
|---|---|
| **Complainant:** | Ross L. Hurlbut |
| **Employer:** | Digital Room, Inc. |
| **Complaint:** | Race discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"); Title VII of the Civil Rights Act ("Title VII"). |

I have been employed by Digital Room, Inc. as a Business Development Representative since approximately April 16, 2018, at its Arlington, Texas facility. I am being discriminated against because of my race (White) and retaliated against because I complained about it to management and HR. The company has dishonestly propped up a lower-performing Black sales representative, at the expense of a White sale representative who had demonstrably much better performance and talent. Below is not exhaustive of all pertinent facts and is based on my information and belief.

Digital Room, Inc. is a e-commerce printing company with over 200 employees in Arlington. Its Business Development Representatives are sales representatives tasked with finding and generating new customers and sales orders, especially for the company's private print store products and services. These representatives are paid both an hourly rate as well as commissions (based on new customer business and orders they personally initiate and generate).

Between my April, 2018, hire date to June, 2019, I was the top producer in business development sales. I exceeded my quotas by approximately 137% on average a month over that period. No other business development representative came close to my success. In approximately April, 2019, or so, management told me that the board had noticed my performance and that I was being considered for promotion to the national sales team (Customer Service Level 3). I also received a raise.

However, the company delayed my one-year review and has not so promoted me. Management decided to unfairly "prop up" another Business Development representative with phony sales numbers, even though his production was consistently and substantially below my performance. That representative also demonstrated relatively poor sales skills and initiative in generating customers or new sales, in contrast to my demonstrated ability. Also, he was relatively unable to develop and maintain sufficient customer relationships.

This other sales representative is Reginald Hullaby. He and I both started as new Business Development Representatives on the same day. We were doing the same job. He is Black.

Management's plan would allow Mr. Hullaby to look much more productive than he actually was, by crediting sales to him as though he had initiated, generated or sold them—even though he did not. Management and Mr. Hullaby "fabricated" his production numbers in order to make it look like he was equaling or outperforming me. This would ensure that, on paper, it would look like a Black employee was out performing (although falsely) a White employee in the same position, to ensure that he got greater recognition, commissions or promotion opportunity. All of this phony performance was based upon fabrication, or lies. I appears they wanted to favor a Black employee over a White employee, who was outperforming the Black employee.

These phony sales clearly violate the company's own written commission and sales crediting rules and account assignment approval system.

In fact, my managers specifically discussed and planned to get Mr. Hullaby to appear as though he was "*as good, if not better than Ross.*" They carried through with this by discriminating against me in favor of him.

They implemented their plan by unfairly "padding" his sales numbers with phony sales. Among other things, management literally gave him credit for sales *already* placed on its regular online ordering system—which were *not* in any way initiated, sold, generated or placed by Reginald Hullaby. In or around July, 2019, I discovered that the company had been artificially padding his sales numbers, some of which I later determined may have begun in June, 2019 or earlier.

For example, first they gave him "fabricated or false sales," which he did not initiate, generate, sell or close. Second, they credited him with established "customer accounts" which already had proven or repeated sales, which he likewise did not initiate, generate, sell and close. Third, they also funneled new or hot sales leads to him outside of the normal procedure, which they gave only to him. Fourth, they allowed him credit for "old" sales that had already been placed that he had nothing to do with to make it look as if he originally placed or helped placed such orders himself. All of this was done to create a false narrative or record to make him look as though he was selling or producing more than I was. Apparently, this would allow the company supposedly to claim they were "promoting" a minority—at the expense of a White employee. The company has continued to do this month after month, in one fashion or another, through the present.

EEOC & TWC Charge/Complaint (attachment)
12/2/19

Consequently, in approximately late June or July, 2019, Mr. Hullaby's end-of-the month sales reports *suddenly skyrocketed* with phony sales numbers, *adding* approximately $15,000-20,000 and in some cases as much as $35,000 a month to his sales numbers--none of which he created or earned himself. With such false and unearned sales, his numbers suddenly and dramatically jumped from approximately $40,000-45,000/month to as high as $92,000/month. His numbers suddenly passed my numbers, all by design or result of the company's plan.

In sharp contrast, I was not allowed or given credit for such large volumes of: phony sales, established customer accounts, new/hot sales leads, or old sales. I was not propped up, assisted or given this same advantage. I believe that this was racially based or otherwise due to my race, because Mr. Hullaby was Black.

It is also believed that the company implemented an employment scheme or "program" to unfairly favor or promote certain races or skin colors over a different race or color.

This scheme, as applied to me, would negatively affect an employee of a different race or color. Digital Room clearly favored a minority employee over a Caucasian employee, apparently under the supposed excuse or ruse of promoting its new push perhaps to try to make itself look more inclusive. Their own HR Director, Alma Avalos openly stated that White employees are *not* in a protected class. This shows pure intent to discriminate by race.

As a direct consequence of fabricating Mr. Hullaby's sales numbers, the company more than doubled his sales numbers within about 2-3 months with phony sales. This has continued even now. As a result, Mr. Hullaby has a built-in customer base falsely attributed to him, for which he also continues unfairly to receive greater commissions then me. Furthermore, it is also known that Mr. Hullaby was also given a higher hourly pay rate than me.

Around July 30 and 31, 2019, I complained about this racial favoritism to my manager and then to HR. I have since repeatedly complained about this to management, including my manager (Wendy Vanderpoel), the vice president (Shane Clark) and Human Resources (Director Alma Avalos, and HR representative Lisa Fiala). I provided them with very specific information and documentation. I asked them to please stop this unfair and racially discriminatory favoritism and such fraudulent or false accounting practices. I specifically complained that this was race discrimination and retaliation.

However, they have done nothing to either stop or correct what they have done. Mr. Hullaby continues to be propped up with phone sales and unearned commissions and is now also getting credit for repeat sales based on the original phony sales.

The company has not initiated any follow up with me or requested any additional information or documentation I offered. It is as though management is waiting for this to blow over, thereby allowing Mr. Hullaby's fake record of high sales to look more "legitimate" by the passage of time, and/or to reward or promote him rather than me. My work environment has been hostile.

After making my complaints I was targeted for retaliation. For instance, my manager, Wendy Vanderpool, has tried to set me up or falsely accuse me of technical rule or attendance violations, all of which were false. I complained to HR that she was retaliating and stated that she was doing so. However, HR told me—again falsely—that there was no such retaliation and they had no verification that she had said that. Management has been trying to find ways to discipline or fire me for coming forward with my complaints. There has been a wave of reprisals against me since I initially reported this, among other things, by trying to find slip ups or technicalities against me concerning communications, time cards, time reporting, PTO, unpaid time off or customer follow up by my direct manager Wendy Vanderpoel and others. None of these actions against me ever occurred before I made my complaint. I have also been closed off and isolated and shunned at work. These reprisals are not coincidental. I asked for protection against retaliation, but the company has done nothing and allowed it to continue.

My complaints been met with denial, insults, derision and intimidation by not only HR, but also my superior, VP Shane Clark. In fact, the Director of HR specifically stated that as a White man, I was *"not part of a protected class"* under discrimination law, and therefore had no case of discrimination or anything to complain about.

The conduct described above has caused damages to me including, without limitation, loss of earnings and commissions, loss of promotion or opportunity for promotion and/or benefits, loss of reputation and other damages.

Therefore, I believe that, among other things or violations I have been the victim of race and/or color discrimination and retaliation at work by my employer and/or other employees and managers in violation of Title VII, TCHRA and/or other laws.